No.

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

In re CHARITY MAINVILLE,
Petitioner.

---

From the United States District Court
for the Middle District of North Carolina
Civil Action 1:25-cv-417 and 1:25-cv-302

---

## PETITION FOR WRIT OF MANDAMUS

---

Charity Mainville
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

*Pro Se, Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION............................................................................... 1

RELIEF SOUGHT .............................................................................. 2

ISSUES PRESENTED........................................................................... 4

    1. Does the district court's prolonged inaction warrant mandamus
       to compel exercise of jurisdiction? ........................................... 4

    2. Does categorical denial of CM/ECF access to a pro se litigant
       violate due process and the right to access the courts?.................... 4

    3. Is mandamus appropriate where Petitioner lacks an adequate
       alternative remedy, and judicial intervention is necessary
       to safeguard access to justice? ................................................ 4

STATEMENT OF FACTS ..................................................................... 4

STRUCTURAL INEQUALITY AND
CONSTITUTIONAL VIOLATIONS....................................................... 15
    I.    Systematic Barriers to Access.................................................. 15
    II.   Judicial Name Disclosure and Transparency ............................ 18
    III.  Electronic Filing as a Weaponized Barrier .............................. 20
    IV.  Chilling Effect and Psychological Harm .................................. 22
    V.   Statement of Good Faith and Judicial Respect .......................... 24

MANDAMUS STANDARD AND ARGUMENTS.................................... 25
1. No Other Adequate Means to Attain the Relief.............................. 26
2. Clear and Indisputable Right to the Requested Relief....................... 28
3. Issuance of the Writ is Appropriate Under the Circumstances............ 32

CONCLUSION.................................................................................. 34

CERTIFICATE OF COMPLIANCE ...................................................... 36

CERTIFICATE OF SERVICE ............................................................... 37

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Bioventus LLC v. Trindent Consulting International Inc.*,
1:18-cv-00815 (M.D.N.C.).................................................32

*Cheney v. U.S. Dist. Court*,
542 U.S. 367, 380 (2004) ..........................................1, 26

*Commodity Futures Trading Commission v. Thomas*,
1:16-cv-00226 (M.D.N.C.).............................................32

*Haines v. Kerner*,
404 U.S. 519, 520 (1972). ...........................................15

*In re Charles K. Sewell*,
690 F.2d 403, 409 (4th Cir. 1982)................................26, 28

*In re Lockheed Martin Corp.*,
503 F.3d 351 (4th Cir. 2007).......................................27, 32

*In re American Rivers*,
372 F.3d 413 (D.C. Cir. 2004).........................................33

*In re Lockheed Martin Corp.*,
503 F.3d 351 (4th Cir. 2007).......................................27, 32

*Johnson v. Mueller*,
415 F.2d 354, 355 (4th Cir. 1969)....................................17

*Molski v. Evergreen Dynasty Corp.*,
500 F.3d 1047 (9th Cir. 2007)........................................23

*News & Observer Publ'g Co. v. Poole*,
330 N.C. 465, 478, 412 S.E.2d 7, 15 (1992) ..........................5

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
148 F.3d 396, 403 (4th Cir. 1998)....................................26

*PBM Prods., LLC v. Mead Johnson & Co.*,
639 F.3d 111, 121–22 (4th Cir. 2011).................................27

*Richmond Newspapers, Inc. v. Virginia,*
448 U.S. 555 (1980) ...................................................................19, 29

*Rum Creek Coal Sales v. Caperton,*
867 F.2d 313 (4th Cir. 1989) ..................................................................30

*Sansotta v. Town of Nags Head,*
724 F.3d 533 (4th Cir. 2013) ..................................................................23

*United States v. Moussaoui,*
No. 01-4897 (4th Cir. 2002) ...................................................................27

## Statutes

28 U.S.C. § 1651 ...................................................................................1

42 U.S.C. § 1983 ...........................................................1, 6, 12, 15, 29

42 U.S.C. §§ 12131–12165 ...................................................................1

42 U.S.C. §§ 3601–3619 ...................................................................1, 6

## Rules

FRAP 21 ...............................................................................................1

Fed. R. Civ. P. 4(e)(1) .........................................................................9

Fed. R. Civ. P. 4(m) ...........................................................................12

Fed. R. Civ. P. 12(b) .....................................................................11, 14

Fed. R. Civ. P. 59(e) ......................................8, 10, 12, 26, 27, 28

Fed. R. Civ. P. 65(b) ...........................................................................28

Fed. R. Civ. P. 72(a) ...............................10, 11, 12, 26, 28

M.D.N.C. Local Rule 6.1(a) .................................................14, 15, 30

M.D.N.C. Local Rule 7.3(a) ...........................................................7, 8

M.D.N.C. Local Rule 7.3(j)(10) .................................................................8

## Amendments

U.S. Const. amend. I ....................................................................5, 29, 30

U.S. Const. amend. V ......................................................................3, 29

U.S. Const. amend. XIV ..................................................................5, 29

## Other Authorities

Guide to Judiciary Policy, Vol. 1, § 1440.10(a) .................................11

*The Signaling Effect of Pro Se Status, Law & Social Inquiry*, Vol. 42, Issue 4 (2017) .................................................................................................17

## INTRODUCTION

Petitioner Charity Mainville respectfully seeks a writ of mandamus under 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure. Mandamus is appropriate where a litigant's right is clear and indisputable, no other remedy exists, and intervention is necessary to prevent irreparable harm. See *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004).

This petition concerns two related cases in the Middle District of North Carolina—*Mainville v. Soar, et al.*, 1:25-cv-417 and *Mainville v. De Santis*, 25-cv-302. The district court itself has linked these matters, denying relief in one by reference to the other. Both cases involve the same defendant, overlapping legal issues, and procedural barriers such as the denial of electronic filing access and alternative service.

Petitioner brings this single petition to promote judicial efficiency and avoid duplicative filings, especially given her in forma pauperis status. If the Court prefers otherwise, she respectfully requests leave to sever and refile, and that this petition be construed to apply to each case to the extent possible.

Her claims, filed under 42 U.S.C. § 1983, Title II of the ADA, and the Fair Housing Act, have been obstructed by persistent procedural roadblocks that undermine fairness, due process, and transparency. Though she has diligently

pursued her cases and paid all prior fees, the financial and logistical burdens now compel her to seek leave to proceed in forma pauperis—out of necessity, not preference.

Mandamus is warranted. The district court's inaction and systemic denial of basic procedural rights threaten the integrity of the judicial process and Petitioner's access to justice. There is no adequate alternative remedy, and the harm is ongoing. This Court's intervention is needed to protect Petitioner's constitutional rights and ensure justice is not denied through delay or arbitrary procedural denial.

## **RELIEF SOUGHT**

Petitioner requests a writ of mandamus directing the district court to rule on the following:

*Mainville v. Soar, et al,* 1:25-cv-417:

1. Rule 59(e) motion to alter or amend judgment on emergency TRO (ECF No. 9, filed May 28, 2025), with supplemental evidence (ECF No. 10, filed June 6, 2025);

2. Rule 72 objection to the denial of electronic filing access (ECF No. 11, filed June 6, 2025);

3. Emergency Motion to Compel Rulings and, in the Alternative, Renewed Motion for Emergency Relief and Procedural Protection (ECF No. 13, filed June 13, 2025);

4. Supplemental Motion to Renewed Ex Parte Emergency Temporary Restraining Order (ECF No. 38, filed July 31, 2025);[1]

5. Motion for Leave to Effect Alternative Service on private party defendant Anna De Santis (ECF No. 39, filed July 31, 2025).

*Mainville v. De Santis*, 25-cv-302:

1. Rule 59(e) motion regarding the Rule 72 Objection to Order on electronic filing (ECF No. 17, filed July 10, 2025);

2. Motion for Leave to Effect Alternative Service on defendant Anna De Santis (ECF No. 20, filed July 31, 2025).

**Petitioner further requests** that this Court clarify, as part of its mandamus order, that the denial of electronic filing access to a pro se litigant without individualized assessment, and the district court's prolonged failure to resolve threshold procedural motions constitute violations of petitioner's rights to due process and meaningful access to the courts under the Fifth Amendment.

---

[1] *Motions 1-4 in Case No. 1:24-cv-417 are interdependent, with later filings supplementing or renewing earlier motions due to new evidence and the district court's delay in ruling*

**Petitioner also requests** that this Court direct the district court to take all steps necessary—consistent with its authority and obligations under the Due Process Clause—to ensure that Petitioner is provided with the names of all judicial officers or officials responsible for issuing orders in the relevant North Carolina appellate proceedings.

If the Court deems separate petitions more suitable, Petitioner respectfully reiterates her request for leave to sever and refile without penalty or prejudice.

## ISSUES PRESENTED

1. Does the district court's prolonged inaction warrant mandamus to compel exercise of jurisdiction?

2. Does categorical denial of CM/ECF access to a pro se litigant violate due process and the right to access the courts?

3. Is mandamus appropriate where Petitioner lacks an adequate alternative remedy, and judicial intervention is necessary to safeguard access to justice?

## STATEMENT OF FACTS

Events giving rise to this petition began in **August 2024**, when Petitioner appealed from Wake County Small Claims Court proceedings against her former landlord and sought related relief in Wake County District Court on **September 3, 2024**. Throughout those proceedings, Petitioner alleged significant due process

violations by judicial officers allegedly entangled with opposing counsel—a former law clerk for the North Carolina Court of Appeals.

On **February 10, 2025**, Petitioner filed an interlocutory appeal with the North Carolina Court of Appeals. After five irregular orders were issued from the appellate court, she submitted multiple requests for judicial identification. These requests were denied or ignored, in contravention of North Carolina Public Records Law[2] and the First and Fourteenth Amendments. See *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 478 (1992).[3]

Petitioner filed a Fair Housing Act complaint **on April 22, 2025** (*Mainville v. De Santis*, 1:25-cv-302), with an ex parte motion for an emergency temporary restraining order requesting a stay of the state action as well as a request for CM/ECF access. That TRO was denied under the Anti-Injunction Act.

On April 28, 2025, the magistrate judge denied electronic filing access, stating Petitioner must first "demonstrate[] over the initial course of this litigation" an ability to comply with court rules and proceedings (Id., Text Order, Apr. 28, 2025).

---

[2] N.C. Gen. Stat. § 132-1(b) (providing that public records are the property of the people and must be made available "free or at minimal cost," defined as the actual cost of reproduction).

[3] *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 478, 412 S.E.2d 7, 15 (1992) (*"Public records are the property of the people... The purpose of the Public Records Law is to guarantee that the people may obtain copies of public records and public information."*)

On **April 30, 2025**, Petitioner filed a renewed request for CM/ECF access (Id., ECF No. 9), citing ADA-related needs, financial hardship, geographic distance, and her prior experience with electronic filing. She concurrently filed a motion to recuse the magistrate judge for implied bias against pro se litigants, based on a pattern of restrictive rulings across multiple cases (Id., ECF No. 10). These motions were not submitted to the district court judge until **May 22, 2025**.

On **May 23, 2025**, Petitioner filed a related § 1983 civil rights action in the Middle District of North Carolina (*Mainville v. Soar, et al*, 1:25-cv-417) and an ex parte motion for an emergency temporary restraining order (25-cv-417: ECF No. 3). She requested that the state case be stayed or joined pending interlocutory appeal to prevent ongoing harm and to compel disclosure of the unidentified appellate judges so they could be properly named in her amended complaint.

Petitioner also filed a motion for CM/ECF access under Local Rule 5.3(c)(2)[4] (Id., ECF No. 5). The case was assigned to the same district court and magistrate judges presiding over her related Fair Housing Act action, despite a pending recusal motion in that case (25-cv-302: ECF No. 10).

On **May 23, 2025**, in *Mainville v. De Santis*, Petitioner moved for expedited alternative service on Defendant De Santis (Id., ECF No. 11), after repeated

---

[4] Local Rule 5.3(c)(2), M.D.N.C. ("Upon the approval of the assigned Judge, a party to a case who is not represented by an attorney may register as a CM/ECF Filing User in the CM/ECF System solely for the purpose of the action.")

attempts via certified mail and the Durham County Sheriff failed. Petitioner submitted documentation confirming the defendant's knowledge of the summons.

Later that same day, all pending motions were reassigned to the magistrate judge without a formal referral order. This occurred late Friday afternoon of Memorial Day weekend, leaving Petitioner unable to object due to lack of electronic access.

On **Monday, May 26, 2025**—Memorial Day—the magistrate denied the renewed CM/ECF motion via text order. The order stated that Petitioner's failure to file supporting briefs for either the original or renewed CM/ECF motions violated Local Rule 7.3(a)[5], and concluded that Petitioner's assertion of full procedural compliance was inaccurate. The court further wrote:

> "Regardless of how assured Plaintiff may be of her competency to comply with the requirements for electronic filing, she simply does not know what she does not know and she should focus first on meeting the basic procedural requirements of litigating a case before taking on the added challenge…" (Id., Text Order, May 26, 2025)

At the time this order was issued, the motion to recuse the magistrate remained pending.

On **May 27, 2025**, the magistrate judge denied the recusal motion, citing the same procedural reasoning used in the CM/ECF denial. (Id., ECF No. 12)

---

[5] Local Rule 7.3(a), M.D.N.C. ("All motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief except as provided in section (j) of this rule. Each motion shall be set out in a separate document.")

While M.D.N.C. Local Rule 7.3(a) does require a brief unless exempted under subsection (j), Petitioner noted that Rule 7.3(j)(10) exempts motions "to which all parties to the action consent." At the time, Petitioner was the sole party exempting her from the local rule. She also found no precedent applying this briefing rule to deny CM/ECF access to any other pro se litigant.

On **May 27, 2025**, in *Mainville v. Soar, et al.*, the district court judge denied Petitioner's emergency motion for a temporary restraining order (25-cv-417: ECF No. 6), dismissing her assertion that a 15-day appellate deadline posed constitutional harm as "vague, conclusory, and insufficient" under Rule 65. The ruling failed to address her request for disclosure of unidentified judicial officers.

On **May 28, 2025**, Petitioner filed a timely Rule 59(e) motion (Id., ECF No. 9), renewing her request for judicial identification and outlining immediate, ongoing harm.

In *Mainville v. De Santis*, she simultaneously filed an Urgent Motion to Strike and/or Vacate Improper Orders (25-cv-302: ECF No. 13), challenging the magistrate judge's authority to rule. According to the docket, this motion was submitted to the district court judge on **May 30, 2025**.

On **June 5, 2025**, however, the magistrate judge issued a text order denying that motion—even though no formal referral appeared on the docket at the time. The order claimed Petitioner failed to cite record evidence or legal authority, and

further rejected her request as a "purported" disability accommodation, asserting that she had not documented a disability or cited authority requiring access to CM/ECF even though it was outlined in Petitioner's initial complaint. (Id., Text Order, Jun. 5, 2025, Id., ECF No. 1)

That same day, the magistrate judge also denied Petitioner's Motion for Alternative Service (25-cv-302: ECF No. 11), concluding that Petitioner had not met the requirements under Rule 4(e)(1) and North Carolina Rule 4(j1). The denial order dismissed the attached declaration made under penalty of perjury and referred to an email from opposing counsel as "purported," implying the evidence was unreliable (Id.).

Following these rulings, Petitioner contacted the case manager as to why the magistrate judge ruled on motions submitted to the district court judge and was informed that docket entries reflecting submission to the district court judge may have been erroneous. Shortly thereafter, the docket was altered to state that submission to the district court judge had been a clerical error.

On **June 6, 2025**, the magistrate judge denied Petitioner's CM/ECF motion in *Mainville v. Soar, et al.* (25-cv-417: Text Order), citing "the same, basic, equally applicable reasons" stated in prior orders from April 28, May 26, and June 6, 2025, issued in her related case. The denial lacked individualized assessment as required.

That same day, Petitioner filed Rule 72 objections to the CM/ECF denials in both cases (25-cv-417: ECF No. 11; 25-cv-302: ECF No. 14).

She also filed a supplement to her Rule 59(e) motion (25-cv-417: ECF No. 10), explaining that she had been compelled to submit her appellate record under protest, that the state appellate court was imposing unauthorized fees and threatening dismissal for nonpayment, that her press request for the judges' names had been ignored, and evidence of potential improper influence by the defendants in a related administrative case.

On **June 13, 2025**, Petitioner filed an Emergency Motion to Compel Rulings and, in the Alternative, Renewed Motion for Emergency Relief and Procedural Protection (25-cv-417: ECF No. 13). The court took no action.

On **June 18, 2025**, Petitioner attempted to file an emergency supplemental motion in *Mainville v. Soar, et al.* notifying the court that, after being served, opposing counsel had filed motions in state appellate proceedings for sanctions and dismissal—relying on the same state appellate orders she was actively challenging. Lacking CM/ECF access, she requested a one-time exemption to file the motion by email, but the Clerk's Office refused. Due to illness, out-of-state travel, and state appellate deadlines, she was unable to file in person, get to a post office, or afford a courier that would charge $110 or more. The supplemental motion was never docketed.

On **June 26, 2025**, judicial defendants moved to dismiss under Rule 12(b) in *Mainville v. Soar, et al.* (25-cv-417: ECF No. 20), citing a non-existent "N.C. R. App. § 16.06" and a broken URL to claim appellate judges' identities are disclosed on a 90-day delay. The cited source was referring to a press release, not a legal rule.

Separately, in an effort to obtain a ruling on pending motions, Petitioner filed an administrative complaint under the *Guide to Judiciary Policy*, Vol. 1, § 1440.10(a), with the Chief Judge. The complaint was summarily dismissed without review.

On **July 1, 2025**, the North Carolina Court of Appeals dismissed Petitioner's interlocutory appeal without explanation, citation, or judicial identification.

On **July 3, 2025**, Defendant Yopp filed a 12(b) motion (25-cv-417: ECF No. 24), arguing *Rooker-Feldman* barred relief based on the July 1 dismissal—an outcome Petitioner had warned about in her Motion to Amend (Id., ECF Nol. 10).

That day, Petitioner emailed the Clerk about her pending Rule 72 objections, citing severe hardship caused by repeated in-person filing. The Clerk responded that the ADA "does not apply to federal courts." When Petitioner clarified her request was based on Judicial Conference policy, not the ADA, the response was dismissive and mocking. (See Exhibit 1).

Later that day, the district court judge denied her Rule 72 objection in *Mainville v. De Santis* (25-cv-302: ECF No. 15), upholding the magistrate's denial and citing—for the first time—an internal memorandum as authority. However, he did not rule on the same objection in her § 1983 case.

On **July 10, 2025**, Petitioner filed a Rule 59(e) motion in *Mainville v. De Santis* (Id., ECF No. 17), challenging the denial of the Rule 72 objection; it remains pending. She also filed a Motion for Extension of Time to Serve Summons (Id., ECF No. 19), noting that the July 22 deadline under Rule 4(m) was approaching and that related service was also pending in the § 1983 case.

In *Mainville v. Soar, et al.* (25-cv-417: ECF No. 28), Petitioner filed an amended complaint adding De Santis and ALJ Turrentine as defendants after discovering new evidence. She was still unable to identify "John Doe" judicial actors. The amended complaint included eleven additional constitutional violations that occurred since she filed her initial complaint. She also filed a Notice of Ongoing Harm (Id., ECF No. 26) and Notice of Procedural Misconduct and Clarification of Relief Sought (Id., ECF No. 27), documenting retaliation, clarifying relief, and preserving the record.

On **July 11, 2025**, the district court denied pending Rule 12(b) motions as moot following the amended complaint, without prejudice to refile (Id., ECF No.

30). None of Petitioner's motions were addressed, leaving essential matters unresolved.

To exhaust remedies for identifying judicial officers in her state appellate proceedings, Petitioner sought legislative review. On **July 17, 2025**, she spoke with the North Carolina General Assembly Oversight Committee Director and attorney (Exhibit 2). Attorney, Wes Jones, initially stated that clerks may issue dismissal orders—later described as a "misspeaking," with no alternative law.

On **July 18, 2025**, Petitioner filed another Administrative Oversight Complaint directly with administrative office outlining denial of accommodations, delayed rulings, and systemic barriers (Exhibit 3). Despite confirmation of receipt and follow-ups, no substantive response has been received.

On **July 22, 2025**, the district court judge denied Petitioner's motion to extend the service deadline in *Mainville v. De Santis* (25-cv-302: ECF No. 19). He appeared to question the authenticity or applicability of the records from the Sheriff's Department and USPS—agencies over which Petitioner has no control—implying they might not relate to her actual service efforts. Despite this denial, the court then sua sponte granted Petitioner an additional 30 days to complete service, while threatening dismissal of case if Petitioner is unsuccessful. The decision also came while Petitioner's motion to amend—addressing the service-related issues—remained pending.

13

On **July 24, 2025**, Defendant Yopp filed a second Rule 12(b) motion in *Mainville v. Soar, et al.* (25-cv-417: ECF No. 32), repeating earlier arguments and labeling Petitioner's claims "fantastical" and "vexatious" and requesting the court deny all future requests made by Petitioner to amend her complaint. That same day, counsel for the Judicial Defendants sought an extension to respond to the amended complaint (Id., ECF No. 34) without the required consultation under Local Rule 6.1(a)[6]. The court granted the extension the next day, before Petitioner could object (Id., Text Order, Jul. 25, 2025).

On **July 31, 2025**, Petitioner submitted four filings in *Mainville v. Soar, et al.*: (1) a Response opposing Yopp's motion to dismiss (Id., ECF No. 37); (2) a Supplemental Motion to Renewed Ex Parte TRO, including new evidence and requesting judicial name disclosure (Id., ECF No. 38); (3) a Notice of Intent to Petition for Writ of Mandamus and Request for Expedited Ruling (Id., ECF No. 36); and (4) a Motion for Leave to Effect Alternative Service on De Santis (Id., ECF No. 39). The latter was also filed in *Mainville v. De Santis* as a renewed motion for alternative service (25-cv-302: ECF No. 20).

On **August 13, 2025**, the state attorney filed another motion for extension in *Mainville v. Soar, et al* to respond to the amended complaint, again without the

---

[6] **Local Rule 6.1(a), M.D.N.C.** ("All motions for an extension of time to perform an act required or allowed to be done within a specified time must comply with Fed. R. Civ. P. 6(b) and show prior consultation with opposing counsel and the views of opposing counsel.")

required consultation under Local Rule 6.1(a) (25-cv-417: ECF No. 43). The motion alleged Petitioner would object but was granted within one hour, leaving her no opportunity to do so.

Finally, Petitioner respectfully emphasizes that at every stage of this litigation, she has acted with transparency and good faith. Prior to initiating any federal claims—including this mandamus petition and her § 1983 action—Petitioner notified the relevant courts of the ongoing violations and gave them multiple opportunities to correct the errors in question to avoid escalating the matter. These communications were not confrontational but intended to provide the judiciary with an opportunity to uphold the rule of law without further litigation. It is therefore deeply unsettling that her notices were disregarded.

## STRUCTURAL INEQUALITY AND CONSTITUTIONAL VIOLATIONS

Petitioner understands that the legal standard and precedent will guide this Court but respectfully urges that structural inequality and constitutional violations be afforded equal weight.

### I. Systemic Barriers to Access

Courts recognize that pro se litigants are not expected to 'sound' like attorneys, and filings should be based on substance rather than form. Even the Supreme Court has emphasized that such filings must be "held to less stringent

standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the opposite has occurred here. Petitioner has adhered to attorney-level standards—submitting formal motions grounded in law—yet her filings have been ignored or met with hostility.

The rule of law exists to protect the powerless from abuses of power. Judges are entrusted with the responsibility to adjudicate based on the law—not on affiliations, assumptions, or convenience. Yet when cases are only reviewed on paper, the court may forget that a person stands behind the filing. For attorneys and judges, litigation is routine. But for the individual seeking justice, it demands extraordinary effort—diligence, dedication, and emotional labor. When a pro se litigant meets that burden, the court's response should reflect respect, not suspicion. Petitioner explicitly informed the federal court that she was sensitive to adverse filings due to a prior hostile court experience. This was not acknowledged.

Her experience has felt unbelievable even to her. Petitioner did not file in multiple courts to seek different answers. Each step was reactionary—when one institution failed, harm escalated, and was forced to seek relief elsewhere. She came to federal court with hope that it would address the wrongdoing she experienced. Given the severity of the allegations, the court should have acted swiftly. Instead, it shielded those who repeatedly violated the law.

Petitioner's experience is supported by empirical research showing that pro se litigants—particularly women—face systemic barriers and disproportionately unfavorable outcomes.[7] The pro se status itself triggers negative stereotypes and these biases significantly reduce settlement awards and procedural fairness. See *The Signaling Effect of Pro Se Status, Law & Social Inquiry*, Vol. 42, Issue 4 (2017)[8]; see also *Judges in Lawyerless Courts*, 110 Geo. L.J. 509 (2022).[9]

Judicial bias, even if unconscious, cannot excuse procedural inequality. See *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969) (recognizing the importance of judicial fairness in handling pro se litigants).

Petitioner has lived that disparity. Courts appear to extend a presumption of credibility to attorneys—often granting their motions with minimal scrutiny— while holding pro se litigants to higher standards. Procedural rules, intended to safeguard fairness, have instead been weaponized to exclude her claims. Despite following court rules and submitting proper documentation, Petitioner has been implicitly accused of fabrication, while a state attorney submitted demonstrably false evidence without consequence[10]—a pattern that echoes her treatment in state

---

[7] See Petitioner's *Notice of Ongoing Harm, Mainville v. Soar*, 25-cv-417 (M.D.N.C.), ECF No. 26, at 4 ¶ 3.

[8] Rebecca L. Sandefur & Thomas M. Clarke, *The Signaling Effect of Pro Se Status*, 42 **Law & Soc. Inquiry** 1091 (2017), https://law.indiana.edu/publications/faculty/2020/vdq-signaling-effect.pdf.

[9] Kathryn A. Sabbeth, Judges in Lawyerless Courts, 110 Geo. L.J. 509 (2022), https://scholarship.law.columbia.edu/faculty_scholarship/2742/

[10] See Petitioner's Notice of Misconduct, *Mainville v. Soar*, 25-cv-417 (M.D.N.C.), 25-CV-417: ECF Doc No. 27.

court. Such treatment is not only unjust; it violates due process and equal protection under the law.

## II. Judicial Name Disclosure and Transparency

At the core of this petition lies a simple but fundamental right: to know the identity of the judges who issued binding orders against her. Petitioner's multiple requests—including through media access as a member of the press—have been denied without legal justification, in violation of North Carolina Public Records Law and the constitutional guarantees of due process and public access.

Without disclosure, Petitioner cannot name proper defendants forcing her to litigate against "John Doe" defendants indefinitely, undermining both her substantive rights and the legitimacy of the proceedings themselves.

Petitioner provided direct evidence to both the legislature and the federal court showing similar orders issued by the North Carolina Court of Appeals have included the names of judicial officials—making this case an outlier. This concealment—across ten improper orders issued concurrently—strains credulity.[11] It suggests either that the same judges issued all ten orders in a tightly coordinated manner or that the entire appellate court acted collectively without attribution. Both scenarios raise serious procedural questions. At minimum, the pattern casts

---

[11] See Amended Complaint in *Mainville v. Soar*, 25-cv-417 (M.D.N.C.), ECF No. 28, at 37 (C15), 40 (C18), 46 (C23), 51 (C26), 53 (C28), 56 (C30), 60 (C33), 63 (C36), 65 (C37), 66 (C38), and 67 (C38)

doubt on whether the orders were validly issued by duly assigned judicial officers, or whether internal administrative actors may have improperly exercised judicial authority. Legislative counsel previously suggested—before later retracting—that clerks "issue orders all the time including dismissals." If true, this would constitute a severe breach of judicial ethics, separation of powers, and potentially criminal impersonation of judicial authority. Where judicial power is exercised, the public has a right to transparency; and where such power is obscured, the legitimacy of the orders themselves is called into question.

Further compounding this concern, when Petitioner attempted to raise the issue before the North Carolina Supreme Court through a Petition for Discretionary Review, the Court denied the petition without submission. This was despite the fact that Defendant Yopp submitted a response to the Supreme Court that either had gross misrepresentations or that he had insider knowledge about proceedings in the Court of Appeals, knowledge not available to Petitioner. See Petitioner's *Amended Complaint*, ECF No. 28 at 45–57, Claims 22–23.

The US Supreme Court has long held that transparency in judicial proceedings is a constitutional mandate. In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Court found that public access to judicial proceedings is essential to the functioning of democracy and accountability. That principle necessarily includes knowledge of who the adjudicators are. The Fourth Circuit

reaffirmed this in *In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018), holding that courts cannot impose secrecy or deny fundamental rights without narrowly tailored and legally justified reasons.

Here, the denial of judicial identity—citing only vague internal policy, despite Petitioner providing evidence that contradicts it—lacks any legal foundation. Mandamus relief is not sought to decide the merits of her claims, but to compel disclosure so that those claims can be meaningfully litigated.

### III. Electronic Filing as a Weaponized Barrier

Petitioner has submitted six motions in relation to requesting CM/ECF access. Each request was denied based on vague references to "competency," a discretionary standard applied arbitrarily and without clear legal justification. Denial of electronic filing in this context violates both equal protection and due process where it functions to impair, rather than facilitate, access to the courts.

The court's response—that "[p]laintiff has not been denied access to the court where she continues to **freely** litigate" [12] and that requiring compliance with procedural rules does not violate the Constitution—rings hollow. Rules become unconstitutional when selectively applied to conceal bias or create unequal burdens. The Middle District of North Carolina has been identified in scholarly

---

[12] See Order, Mainville v De Santis, 25-cv-302 (M.D.N.C.), Doc No. 15, at 11 ¶ 1

research for imposing disproportionate hurdles on pro se litigants seeking electronic filing access. As one published study explained:

> "While the discretionary approach to e-filing might suggest that districts afford more flexibility to pro se parties, case law complicates that conclusion. Some courts are unwilling to grant the pro se party's motion for e-filing access."[13]

The burden is not hypothetical. Petitioner lives more than an hour from the courthouse, and filing documents requires 2–3 hours due to travel—time that must be taken during standard business hours when the clerk's office is open. Petitioner has traveled to Greensboro at six times solely to file documents. Based on her hourly wage as a contract worker, she has incurred over $1,000 in lost wages as a direct result of the court's refusal to permit electronic filing access. These losses are in addition to more than $700 in out-of-pocket expenses for printing, express mailing, and courier fees, with filings costing between $35 to $180 each.[14]

Meanwhile, opposing counsel enjoy electronic access and receive prompt rulings—even when their motions violate local rules. That disparity undermines the "equal justice under law" that the judiciary purports to uphold.

The magistrate judge framed his denial of CM/ECF access as a favor to Petitioner, implying that electronic filing requires specialized knowledge or

---

[13] Andrew Hammond, *The Federal Rules of Pro Se Procedure*, 90 Fordham I. Rev. 2689, 2709 (2022), https://ssrn.com/abstract=3800119.

[14] Petitioner affirms under penalty of perjury that all stated expenses are accurate and verifiable. She is prepared to provide receipts upon request should the Court find such documentation necessary.

intelligence. This presumption is not only inaccurate, it is condescending. Petitioner reviewed the relevant documentation and, as someone who designs websites, writes code, and operates advanced software platforms, she possesses skills well beyond those required by CM/ECF. To suggest she lacks the intelligence to navigate the system—after she affirmatively disclosed her qualifications[15]—is not merely biased; it borders on discriminatory.

Petitioner also informed the court that the Federal Judicial Center has reported that approximately two-thirds of federal district courts allow pro se litigants to file electronically on a case-by-case basis.[16] The refusal to permit Petitioner equal electronic access—particularly when her filings meet legal and evidentiary standards—constitutes a systemic denial of practical access to justice.

## IV. Chilling Effect and Psychological Harm

Each time Petitioner has asserted her rights, she has been met with dismissive orders rather than rulings on the merits. Statements such as "she simply does not know what she does not know," or the repeated use of loaded terms like "purportedly," "apparently," or critiques such as "failing to cite authority" on matters where no citation is legally required, serve less to clarify the law and more

---

[15] See *Mainville v. Soar*, 25-cv-417 (M.D.N.C.), ECF No. 5.
[16] Federal Judicial Center, *Local Rules on Electronic Filing* (2025), https://www.fjc.gov/sites/default/files/materials/39/Local%20Rules%20on%20Electronic%20Filing.pdf

to discredit her competence. These are not neutral assessments—they are demeaning.[17]

For a litigant on the spectrum, such invalidation compounds psychological distress and risks silencing further advocacy. Petitioner notified the court that prolonged procedural limbo and mistreatment were causing ongoing harm, and she offered to submit medical documentation under seal to substantiate this impact—especially given that defendants had previously sought to weaponize her conditions against her.[18] Yet the harm continues. The repeated denial of access and issuance of orders that defy legal reasoning inflict trauma beyond the normal strain of litigation.[19]

This is not conjecture; in *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007), the court recognized the dangers of litigation being used as a tool of harassment and emphasized the judiciary's role in curbing abusive tactics. While the context differs, the principle applies here: courts must not allow legal procedure to be manipulated in ways that silence or intimidate parties, particularly those asserting civil rights. Similarly, in *Sansotta v. Town of Nags Head*, 724 F.3d 533 (4th Cir. 2013), the court affirmed that procedural fairness is not optional—it is a constitutional mandate. Denying a party the opportunity to meaningfully

---

[17] See *Mainville v De Santis*, 25-cv-302 (M.D.N.C.), Doc No. 15, at 5 ¶ 3
[18] See *Mainville v. Soar*, 25-cv-417 (M.D.N.C.), ECF No. 26
[19] Id., ECF No. 26, at 7 ¶ 4.

engage in litigation, whether through inaction or selective enforcement of rules, undermines due process.

The filing by Defendant Yopp in his second motion to dismiss—containing defamatory and degrading language—should have been appalling to any federal court, especially given Local Rule prohibitions on such conduct. That filing occurred after Petitioner submitted a notice of ongoing harm, exacerbating trauma which signals malicious intent. The court's refusal to address these violations or even acknowledge their impact demonstrates a systemic failure to protect the rights of those most vulnerable to judicial bias.

## V. Statement of Good Faith and Judicial Respect

Petitioner emphasizes that she does not accuse the district court judge of malice or ill intent. She acknowledges his reputation for fairness and integrity. With a professional background in psychology and behavioral analysis, Petitioner can distinguish a reactive decision from one motivated by animus. If this were not a matter of law, she might even find his instinct to protect professional colleagues admirable and empathizes with the complexity of his position.[20]

However, institutional loyalty cannot override constitutional duty. Petitioner should not be punished for asserting her rights. It was not she who breached the law—it was those entrusted to uphold it, placing the court in the unfortunate

---

[20] See *Mainville v. De Santis*, 25-cv-302 (M.D.N.C.), ECF No. 17, at 10.

position of having to respond to their misconduct. One should not remain loyal to those who abuse their position, but rather to the principles that position is meant to serve. Delay and silence in the face of constitutional violations are not neutral—they constitute a denial of justice.

Petitioner does not ask for special treatment. She asks only for the opportunity to litigate her case fairly. Without mandamus relief, she will remain unable to identify defendants, unable to file timely motions, and unable to receive rulings on the merits. Justice requires more than theoretical access—it demands meaningful access, applied equally to all.

Finally, Petitioner respectfully clarifies that this section is not an attempt to appeal or reverse the district court judge's rulings. She fully understands the scope and limits of mandamus relief. She asks only that this Court recognize the constitutional stakes and issue the writ so that she may proceed safely and lawfully in the lower court, without fear of further retaliation or procedural obstruction. A writ is not a judgment—it is a safeguard.

## MANDAMUS STANDARD AND ARGUMENTS

A writ of mandamus requires a showing that the petitioner (1) "ha[s] no other adequate means to attain the relief [it] desires"; (2) has a "clear and indisputable" right to the requested relief; and (3) that the writ is "appropriate

under the circumstances." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004). "These hurdles, however demanding, are not insuperable," and the circumstances here meet that standard. *Id.*

### 1. No Other Adequate Means to Attain the Relief

This Court has recognized that mandamus is appropriate to compel a district court to act where delay obstructs justice or causes irreparable interference with rights. *In re Charles K. Sewell*, 690 F.2d 403, 409 (4th Cir. 1982). Petitioner has no other adequate means of obtaining relief due to the district court's ongoing refusal to rule on multiple threshold motions essential to her case's progression.

Despite filing numerous motions—including for emergency relief, notices of ongoing harm, and a Rule 72 objection—critical filings remain unaddressed. This has left the case in procedural limbo and allowed state actors, including named defendants, to continue retaliatory and obstructive conduct without judicial oversight.

Most crucially, the district court has not ruled on Petitioner's Rule 59(e) motion, renewed requests for injunctive relief, or motions related to disclosure of judicial identities. This Court has consistently recognized the role of Rule 59(e) in correcting legal error and preventing manifest injustice. See *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (explaining that Rule 59(e) allows a court to correct its own errors of law or fact and prevent manifest

injustice); *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121–22 (4th Cir. 2011) (affirming the district court's discretion to revise its judgment under Rule 59(e) to address newly raised arguments or evidence). Continued refusal to adjudicate that motion undermines both procedural fairness and the Court's own standards of judicial efficiency.

These unresolved filings have prevented Petitioner from fully amending her complaint and now will be required to request leave to do so, identifying and serving defendants, and protecting herself from retaliation in related state proceedings.

As this Court held in *In re Lockheed Martin Corp.*, 503 F.3d 351 (4th Cir. 2007), mandamus is the proper vehicle where a fundamental procedural right—there, a jury trial—is denied. The same principle applies here: judicial inaction has denied Petitioner meaningful access to the courts altogether. Her case remains stalled; her access to justice is functionally obstructed.

Mandamus is warranted where no other remedy exists and the petitioner faces procedural, constitutional, and irreparable harm. See *United States v. Moussaoui,* No. 01-4897 (4th Cir. 2002). Unlike routine docket delays, the district court's prolonged silence in the face of pending threshold motions constitutes an abdication of judicial responsibility.

Petitioner has pursued every available channel: she has filed a Rule 59(e) motion, a Rule 72 objection, administrative and judicial complaints, and contacted state legislators. She also submitted formal requests for judicial identification as a member of the press—requests that were denied without legal basis. There is no procedural mechanism remaining.

Appeal is unavailable, as it requires a final judgment or an appealable interlocutory order. Without a ruling, Petitioner is trapped in procedural limbo: she cannot amend her complaint, cannot identify or serve parties, and risks dismissal without ever litigating the merits. If the case is dismissed, Petitioner would suffer irreversible financial and strategic loss, and would be forced to appeal to this Court unnecessarily on matters that are strictly procedural.

Where a district court fails to rule and all other remedies are exhausted, mandamus is not merely justified—it is essential to preserve judicial integrity. *Id.*

## 2. ~~Clear and Indisputable Right to the Requested Relief~~

This Court has long recognized that mandamus is appropriate to compel a district court to act where its failure to do so obstructs justice or causes irreparable harm. See *In re Charles K. Sewell*, 690 F.2d 403, 409 (4th Cir. 1982). Here, Petitioner seeks relief from prolonged inaction on several threshold motions— including for emergency relief under Rule 65, reconsideration under Rule 59(e),

judicial identity disclosure, and electronic filing access—each of which implicates fundamental procedural and constitutional rights.

Federal courts routinely resolve TRO requests within days, recognizing their urgent nature. Yet Petitioner's emergency filings have gone unresolved for months, despite demonstrating ongoing retaliatory harm. This protracted silence is not merely inefficient—it violates her rights to due process under the Fifth and Fourteenth Amendments. Moreover, the district court's stated basis for denying emergency relief—lack of specificity and disfavor toward ex parte orders—rings hollow given the lack of comparable scrutiny applied to opposing counsel's defective or misleading filings.

Petitioner also has a clear constitutional and statutory right to know the identities of judicial actors involved in the appellate decisions that form the foundation of her § 1983 claims. In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court held that public access to court proceedings is protected by the First Amendment. The reasoning of that case—grounded in transparency, accountability, and public trust—logically extends to judicial attribution. The public cannot meaningfully scrutinize judicial conduct if the identity of decision-makers is concealed. This principle is especially relevant where Petitioner, as a former publisher and journalist, made her request as a member of the press.

The court's refusal to disclose the names of those judicial actors—without providing any legal justification or conducting the balancing inquiry required by *Richmond Newspapers*—constitutes a modern form of secrecy inconsistent with constitutional norms.

Similarly, *In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018), involved a district court's failure to rule on a motion to modify a gag order. The Fourth Circuit granted mandamus, emphasizing that inaction that permits ongoing constitutional harm—particularly First Amendment harm—is grounds for extraordinary relief. The same logic applies here. Judicial silence is not neutral; it enables continuing injury.

In addition, *Rum Creek Coal Sales v. Caperton*, 867 F.2d 313 (4th Cir. 1989), reinforces the notion that even the appearance of judicial partiality can erode public trust and justify intervention. Petitioner's filings—supported by documentation and filed in good faith—raised concerns about judicial affiliations and professional entanglements, yet the court has offered no ruling or transparency. Such silence undermines confidence in the judiciary's neutrality and obstructs Petitioner's ability to litigate her claims.

This disparity in treatment is further illustrated by the court's inconsistent enforcement of procedural norms. While defendants' motions—often violating Local Rule 6.1(a)—have been granted within hours, Petitioner's time-sensitive

30

filings have languished. This denial imposes disproportionate burdens on her ability to participate in litigation—especially as she is required to travel to file documents or incur repeated mailing costs. These barriers are not theoretical; they are practical, ongoing, and particularly damaging given that Petitioner is a working individual litigating complex constitutional matters.

The denial is made more troubling by the fact that Petitioner paid full filing fees in this matter. It reflects her commitment to the integrity of her claims and her right to access the judicial system equally. Where a court charges a litigant the same fees as any other party, it must also extend the same access to tools that make litigation possible.

Moreover, when a district's procedural practices have been publicly scrutinized in legal and academic literature for creating access barriers for unrepresented litigants, the court has an affirmative duty to ensure it is not compounding that harm through arbitrary or opaque decisions. The appearance of institutional bias—even if unintentional—erodes public confidence in the judiciary and underscores why transparency and equal treatment are not just aspirational values but constitutional mandates.

Mandamus is not a tool for ordinary disagreements; it is a remedy for extraordinary breakdowns. When constitutional rights are chilled, when procedural

protections are ignored, and when judicial inaction itself becomes a barrier to justice, this Court's intervention is not just permitted—it is required.

### 3. Issuance of the Writ is Appropriate Under the Circumstances

When a district court abdicates its duty to rule, and all other remedies are exhausted or ineffective, mandamus is not only justified—it is necessary to preserve the integrity of the judicial process. *In re Lockheed Martin Corp.*, 503 F.3d 351 (4th Cir. 2007).

Petitioner's case does not reflect ordinary delay or docket congestion. It reflects sustained inaction on motions implicating urgent procedural and constitutional rights—including emergency relief, reconsideration, alternative service, and judicial transparency. These motions are grounded in documentary evidence and legal authority yet remain unresolved for months. Courts routinely resolve such motions swiftly, particularly when they affect ongoing harm or litigation viability.

The district court's inaction on Petitioner's motion for alternative service is illustrative. Petitioner has shown that Defendant De Santis has actively evaded service for over 90 days—yet no ruling has issued. Courts regularly grant similar motions within days. For example, in *Commodity Futures Trading Commission v. Thomas*, 1:16-cv-00226 (M.D.N.C.), a motion for alternative service filed on September 16, 2016, was granted within four days. In *Bioventus LLC v. Trindent*

*Consulting International Inc.*, 1:18-cv-00815 (M.D.N.C.), the court issued an order immediately after the plaintiff's reply period closed. The refusal to act here places petitioner at risk of losing her Fair Housing Act claims through no fault of her own. This is not a delay in convenience—it is a denial of justice.

The district court has also declined to rule on Petitioner's request for electronic filing access—a decision that imposes tangible, ongoing burdens. Unlike opposing counsel, Petitioner cannot file or access materials electronically and must rely on in-person or mailed filings, which are financially and logistically burdensome. The denial of electronic filing, in combination with the unresolved motions, forces Petitioner to litigate under unequal conditions that severely impair her ability to prosecute her case.

As the Fourth Circuit held in *In re: Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018), mandamus is warranted where judicial inaction permits ongoing harm. Similarly, in *In re American Rivers*, 372 F.3d 413 (D.C. Cir. 2004), the court emphasized that "a reasonable time for agency action is typically counted in weeks or months, not years," and found delay actionable even without a statutory deadline.

Mandamus is appropriate not because of the passage of time alone, but because of what that time has allowed: critical constitutional claims have gone unaddressed; evasive defendants remain unserved; and Petitioner is left to shoulder

disproportionate financial and procedural burdens. The nature and consequence of the inaction—not its duration—compel this Court's intervention.

Courts must not allow procedural silence to become a mechanism of injustice. This petition is not brought to assign blame, but because judicial inaction, when left unchecked, erodes access to justice and undermines public trust. This Court's intervention is urgently needed—not only to protect Petitioner's rights, but to preserve the fundamental appearance and function of judicial accountability.

## CONCLUSION

For the foregoing reasons, petitioner respectfully requests that this Court issue a writ of mandamus directing the district court to promptly resolve all pending motions; declare that the sustained denial of access and prolonged procedural inaction constitute violations of petitioner's constitutional rights; and grant any further relief this Court deems just and proper. Petitioner has concurrently filed a separate motion to expedite consideration of this petition due to the urgent and ongoing harm described herein.

Should the Court determine that mandamus is not appropriate, petitioner respectfully asks that any denial be accompanied by an explanation grounded in law and fact. In light of the exceptional circumstances presented, and the lack of other available remedies, such transparency is necessary to ensure judicial

accountability and to allow petitioner to understand the legal basis for the Court's decision.

Dated: August 20, 2025

Respectfully submitted,

Charity Mainville
Petitioner, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limit of Fed. R. App. P.

21(d)(l) because, excluding the parts of the document exempted by Fed. R. App. P.

32(f), this petition contains 7,501 words.

2. This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using Microsoft

Word in 14-point font in Times New Roman type style.

Dated: August 20, 2025

Charity Mainville
Petitioner, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, I served copies of the foregoing document and attached exhibits by electronic mail to:

**Hon. William Lindsay Osteen Jr.** via Clerk of the Middle District of North Carolina, Larry Cunningham at Larry_Cunningham@ncmd.uscourts.gov.

All counsel of record in the underlying district court proceedings are registered CM/ECF users in the Fourth Circuit. Accordingly, they will receive electronic notice and copies of this filing automatically through the Court's CM/ECF system. As an additional courtesy, Petitioner also transmitted copies by electronic mail to counsel of record at:

**Kristin J. Uicker**
kuicker@ncdoj.gov

**Mary W. Scruggs**
mscruggs@ncdoj.gov

**Sean G. Delaney**
sgdelaney@hatchlittlebunn.com

Dated: August 20, 2025

Charity Mainville
Petitioner, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

# EXHIBIT 1

**Charity Mainville** <camainville@gmail.com>
To: Larry Cunningham <Larry_Cunningham@ncmd.uscourts.gov>

Thu, Jul 3, 2025 at 12:38 PM

Dear Larry,

I am writing to follow up on my ADA-related request for CM/ECF filing access in both Mainville v. Soar et al., Case No. 1:25-cv-417, and Mainville v. De Santis et al., Case No. 1:25-cv-302. I previously submitted motions in both matters outlining my ADA basis for requesting electronic access, but I have not received any update or ruling. The situation has become untenable.

The continued denial of electronic access—despite my stated disabilities and procedural urgency—is causing severe stress and materially impairing my ability to litigate, particularly with a Rule 12(b) motion now pending. These barriers constitute both a due process violation and a denial of access under 42 U.S.C. § 12132. I cannot afford repeated $40 mailing and printing costs or take time off work to travel to Greensboro.

Magistrate Judge Auld denied my request without addressing the ADA basis or explaining why it was referred to him despite a pending recusal. I filed a Rule 72 objection and a judicial complaint. I also submitted a formal administrative oversight letter to Chief Judge Eagles on June 26, 2025, detailing ongoing prejudice across both of my federal cases.

I am therefore renewing my request for immediate electronic filing access as a reasonable accommodation. Please confirm who is handling ADA coordination for the Middle District or whether this will be forwarded to chambers for resolution.

Thank you,

---

**Larry Cunningham** <Larry_Cunningham@ncmd.uscourts.gov>
To: Charity Mainville <camainville@gmail.com>

Mon, Jul 7, 2025 at 10:18 AM

Good morning, Ms. Mainville:

If you request that action be taken in one of your cases, you must file—in writing, not by email—a motion, pleading, or other document that comports with the Federal Rules of Civil Procedure and the Local Rules of the Middle District of North Carolina. Emails to me or others in the Clerk's Office do not constitute filings, will not be placed on the docket, and will not result in any action being taken by a judge or otherwise. If you have any questions about the status of your cases, please call 336-332-6000 or consult PACER.

Your complaint under Volume 1, Chapter 14, of the Guide to Judiciary Policy was referred to Chief Judge Eagles.

Your email requested the name of the person who handles "ADA coordination" for the Court. The Americans with Disabilities Act does not apply to the federal government, including the Judiciary.

Please direct any further questions to 336-332-6000 and a deputy clerk would be glad to assist you.

Sincerely,



**Larry Cunningham**
*Clerk of Court*          **EXHIBIT 1**

**U.S. District Court for the**
**Middle District of North Carolina**
324 West Market Street
Greensboro, North Carolina 27401

---

**Charity Mainville** <camainville@gmail.com>
To: Larry Cunningham <Larry_Cunningham@ncmd.uscourts.gov>

Mon, Jul 7, 2025 at 10:35 AM

Good morning Larry,

I hope your 4th of July weekend was great. Thank you for the clarification. However, while I understand that the federal judiciary is not directly subject to Title II of the ADA, it is bound by Judicial Conference policy requiring reasonable accommodations and the designation of a Disability Access Coordinator. As publicly stated, each federal court must have a designated individual or office responsible for handling access-related concerns and accommodation requests, consistent with the principles outlined in 28 C.F.R. §35.107.

To be clear, I have properly filed formal motions requesting electronic filing access based on disability-related limitations. I am not attempting to bypass the procedure or asking you to file anything. Those motions have been pending fpor a month with no ruling so I followed up via email only to identify the appropriate coordinator and clarify the status of the unresolved filings. My request is based on an urgent, documented need due to physical, financial, and psychological barriers that prevent repeated in-person or courier filings.

So if you are not that person, I respectfully request the contact information of the Court's designated Disability Access Coordinator so I can ensure my concerns are being addressed properly and request temporary authorization for CM/ECF filing access while my motions remain pending.

I have submitted this matter to the U.S. House Judiciary Committee, but I am genuinely trying to avoid the need to file another oversight complaint. That process should not be necessary simply to access a basic procedural right—one that I've already paid for through my court fees and which is essential to my ability to participate meaningfully in this litigation.

Thank you,

**Charity Mainville**

[Quoted text hidden]

---

**Larry Cunningham** <Larry_Cunningham@ncmd.uscourts.gov>
To: Charity Mainville <camainville@gmail.com>

Mon, Jul 7, 2025 at 10:43 AM

Ms. Mainville:


The information for the Court's "Access Coordinator" is located here: https://www.ncmd.uscourts.gov/court-info/court-locations/greensboro (scroll to the bottom). The Access Coordinator arranges for in-court sign language interpreters or other appropriate auxiliary aids for those with hearing impairments or communications disabilities only. The CFR section you cited pertains to state and local governments.


Sincerely,

2

**Larry Cunningham**
*Clerk of Court*

**EXHIBIT 1**

**U.S. District Court for the**
**Middle District of North Carolina**
324 West Market Street
Greensboro, North
Carolina 27401
www.ncmd.uscourts.gov

[Quoted text hidden]

**Charity Mainville** <camainville@gmail.com>
To: Larry Cunningham <Larry_Cunningham@ncmd.uscourts.gov>

Mon, Jul 7, 2025 at 11:04 AM

Please do not mischaracterize my statements. I did not claim that 28 C.F.R. §35.107 applies directly to federal courts. I referenced it only to highlight that Judicial Conference policy mirrors its principles—requiring reasonable accommodations and coordination for disability-related access. I also find it unnecessary and dismissive to place "Access Coordinator" in quotes, as if to diminish the seriousness of my request.

To be clear, my request is not limited to in-court participation. Judicial Conference policy is not restricted to physical or communication impairments during hearings—it is meant to ensure meaningful access to the judicial process, including procedural participation such as filing.

I am a person. Not just a pro se litigant to be treated as a burden. I wouldn't need to reach out if my case was handled properly. The tone and repeated lack of engagement reflect a level of hostility that is deeply disappointing. I am simply trying to protect myself and access the system like anyone else would. I hope in the future this Court can recognize that and respond with the professionalism and compassion that all people—regardless of representation—deserve.

Thank you,

**Charity Mainville**

# EXHIBIT 2

**Charity Mainville** <camainville@gmail.com>                                    Thu, Jul 17, 2025 at 1:08 PM
To: "Joe Coletti (Gov Ops Staff - House Majority)" <Joe.Coletti@ncleg.gov>, "Wes Jones (Gov Ops Staff - House Majority)"
<Wes.Jones@ncleg.gov>
Cc: "Abigail.McKinney@ncleg.gov" <Abigail.McKinney@ncleg.gov>, "Allison.Gilbert@ncleg.gov" <Allison.Gilbert@ncleg.gov>,
"Andrew.Stiffel@ncleg.gov" <Andrew.Stiffel@ncleg.gov>, "Austin.Dunlow@ncleg.gov" <Austin.Dunlow@ncleg.gov>,
"Casey.Glymph@ncleg.gov" <Casey.Glymph@ncleg.gov>, "Cristy.Yates@ncleg.gov" <Cristy.Yates@ncleg.gov>,
"Cynthia.Echevarria@ncleg.gov" <Cynthia.Echevarria@ncleg.gov>, "Houston.Jones@ncleg.gov"
<Houston.Jones@ncleg.gov>, "Jasmine.Miller@ncleg.gov" <Jasmine.Miller@ncleg.gov>, "Johnna.Smith@ncleg.gov"
<Johnna.Smith@ncleg.gov>, "Justin.Lucas@ncleg.gov" <Justin.Lucas@ncleg.gov>, "Karleigh.Ndiaye@ncleg.gov"
<Karleigh.Ndiaye@ncleg.gov>, "Lana Witt (Rep. Mike Schietzelt)" <Lana.Witt@ncleg.gov>, "Lezonia.Jones@ncleg.gov"
<Lezonia.Jones@ncleg.gov>, "Mason.Powell@ncleg.gov" <Mason.Powell@ncleg.gov>, "Megan.Kluttz@ncleg.gov"
<Megan.Kluttz@ncleg.gov>, "Rachel.Ager@ncleg.gov" <Rachel.Ager@ncleg.gov>, "Sean.Harrington@ncleg.gov"
<Sean.Harrington@ncleg.gov>, "Susanh.Burleson@ncleg.gov" <Susanh.Burleson@ncleg.gov>, "Tammy.Ross@ncleg.gov"
<Tammy.Ross@ncleg.gov>, "Allen.Chesser@ncleg.gov" <Allen.Chesser@ncleg.gov>, "Allison.Dahle@ncleg.gov"
<Allison.Dahle@ncleg.gov>, "Amber.Baker@ncleg.gov" <Amber.Baker@ncleg.gov>, "Amos.Quick@ncleg.gov"
<Amos.Quick@ncleg.gov>, "Ben.Moss@ncleg.gov" <Ben.Moss@ncleg.gov>, "Brenden.Jones@ncleg.gov"
<Brenden.Jones@ncleg.gov>, "Brian.Echevarria@ncleg.gov" <Brian.Echevarria@ncleg.gov>,
"Carla.Cunningham@ncleg.gov" <Carla.Cunningham@ncleg.gov>, "Eric.Ager@ncleg.gov" <Eric.Ager@ncleg.gov>,
"Grant.Campbell@ncleg.gov" <Grant.Campbell@ncleg.gov>, "Grant.Miller@ncleg.gov" <Grant.Miller@ncleg.gov>,
"Jake.Johnson@ncleg.gov" <Jake.Johnson@ncleg.gov>, "Jeffrey.McNeely@ncleg.gov" <Jeffrey.McNeely@ncleg.gov>,
"John.Blust@ncleg.gov" <John.Blust@ncleg.gov>, "Maria.Cervania@ncleg.gov" <Maria.Cervania@ncleg.gov>, "Rep. Mike
Schietzelt" <Mike.Schietzelt@ncleg.gov>, "Shelly.Willingham@ncleg.gov" <Shelly.Willingham@ncleg.gov>,
"Stephen.Ross@ncleg.gov" <Stephen.Ross@ncleg.gov>, "Timothy.Reeder@ncleg.gov" <Timothy.Reeder@ncleg.gov>,
"Zack.Hawkins@ncleg.gov" <Zack.Hawkins@ncleg.gov>

Dear Joe,

This email is to formally document the substance of a phone call we had today, July 17, 2025, at 10:03 AM, which
included Wes Jones, legislative attorney, regarding judicial misconduct and administrative overreach at the North
Carolina Court of Appeals.

You stated the Oversight Committee is unable to do anything or investigate my concerns, to which Mr. Jones stated that
clerks at the NC Court of Appeals are allowed to issue orders, including dismissals of a case. When I clarified that was
not true and that the orders specifically state they were issued by a three-judge panel, I also explained that if a clerk
is issuing orders under that pretense, that constitutes fraud. Mr. Jones made it clear that the legislature and
"attorneys" are aware this is going on.

Then, when I stated they are required by law to release the names of the judges associated with those orders so I can
name them in my § 1983 claim under Section 18 of the North Carolina Constitution, North Carolina Public Access Law,
and the 14th and 1st Amendments of the United States Constitution—Mr. Jones tried to claim there was an internal
policy. When I stated an internal policy doesn't trump the law, he then tried to imply that I don't understand the law
because attorneys haven't complained about this.

I proceeded to immediately interrupt him by asking him to stop insulting my intelligence and made it clear that being
pro se doesn't mean I don't understand the law. I also stated that it makes sense an attorney wouldn't say anything
because they have their careers to worry about and aren't going to challenge a court they conduct business in. I am not
in that position. I am someone who does understand the law, but it is not my career.

I do appreciate you, Mr. Coletti, stepping in and shutting down Mr. Jones to clarify what it is that I am asking for. As you
mentioned, you will speak with the committee to find the laws that allegedly allow them to withhold the names, the
clerk to charge fees without authorization, and the clerk to enter orders.

I will be posting to the public today about our conversation, letting those who have had a case in the Court of Appeals
know that they should request it to be reopened. I will also be reaching out to Governor Stein to see if he too was
aware of the fraudulent misconduct.

I included my background in my first email to this committee so I could avoid the gaslighting and be taken seriously.
That must have been missed, so allow me to save some time and teach the attorneys on the committee about the law:

**EXHIBIT 2**

**Regarding the Clerk and the Release of Judicial Names:**

- Article I, Section 18 of the North Carolina Constitution guarantees access to open court
- N.C. Gen. Stat. § 132-1 provides that people may obtain copies of their public records and public information unless otherwise specifically provided by law
- NC App Rule 32 mandates how orders are issued and dos not confer judicial authority on the clerk whatsoever
- NC App Rule 39 defines the duties of appellate clerks stating it should always be open and have clear record keeping. Nowhere does this rule authorize the clerk to issue judicial orders.

Orders issued without judicial authority are void ab initio. Any clerk who impersonates a judicial panel not only violates state law but renders the resulting orders legally void.

**Regarding Court Fees:**

- Appendix F of the North Carolina Rules of Appellate Procedure, governed by N.C. Gen. Stat. § 7A-20 provides that there is no fee for filing a motion in a cause.
- NC App Rule 12(c) provides that the printing of the record on appeal is done by the clerk per direction of the court. In my case, no such order was issued. The fees were imposed unilaterally and appear retaliatory, as outlined in my filings. No rule authorizes the clerk to impose costs without judicial directive.

**Your Obligation to Investigate:**

- Article I, Section 6 of the North Carolina Constitution mandates that all branches of government remain accountable to the people.
- N.C. Gen. Stat. § 120-19.1 empowers legislative oversight committees to compel testimony, subpoena records, and investigate any state agency or employee—including judicial actors in their administrative roles, such as the Clerk of Court or the Administrative Office of the Courts.

If judges of the North Carolina Court of Appeals—including the Chief Judge or the Chief Justice of the Supreme Court—are aware that a clerk is issuing judicial orders, that constitutes misconduct and fraud at which:

Article IV, Section 17(2) of the North Carolina Constitution provides that the General Assembly shall prescribe a procedure for the removal of a justice or judge for willful misconduct in office, willful and persistent failure to perform their duties, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

Unless you can **cite the specific law** that overrides these provisions, you have an obligation to investigate. Do not cite "internal policy" or offer vague explanations. I also know these are not protected as personnel records, so do not pursue that claim either.

To be clear, I am not asking the legislature to interfere with my case or alter any rulings. I am demanding transparency and an investigation into administrative misconduct that has constitutional consequences.

- I want the unlawful $340 they took from me returned immediately.
- I want the names of the judges who issued the orders.
- Since you have now acknowledged that Clerk Eugene Soar most likely issued those orders, I expect you to subpoena him and question him directly so I may use that information in my federal case and receive the justice I deserve.

In addition, you must report this to the Administrative Office of the Courts so he may be removed from his position. Every day he remains at the North Carolina Court of Appeals increases the number of cases that may need to be reopened.

If the North Carolina General Assembly continues to ignore these facts, it will no longer be negligence—it will be complicity in systemic fraud. It is shameful and deeply disappointing that you have already remained silent and appear to have forgotten your oath to the people, the Constitution, and the rule of law.

Thank you,

**Charity Mainville**

---

**Charity Mainville** <camainville@gmail.com>                    Wed, Jul 23, 2025 at 4:47 PM

To: "Joe Coletti (Gov Ops Staff - House Majority)" <Joe.Coletti@ncleg.gov>, "Wes Jones (Gov Ops Staff - House Majority)"

<Wes.Jones@ncleg.gov>

# EXHIBIT 2

Cc: "Abigail.McKinney@ncleg.gov" <Abigail.McKinney@ncleg.gov>, "Allison.Gilbert@ncleg.gov" <Allison.Gilbert@ncleg.gov>, "Andrew.Stiffel@ncleg.gov" <Andrew.Stiffel@ncleg.gov>, "Austin.Dunlow@ncleg.gov" <Austin.Dunlow@ncleg.gov>, "Casey.Glymph@ncleg.gov" <Casey.Glymph@ncleg.gov>, "Cristy.Yates@ncleg.gov" <Cristy.Yates@ncleg.gov>, "Cynthia.Echevarria@ncleg.gov" <Cynthia.Echevarria@ncleg.gov>, "Houston.Jones@ncleg.gov" <Houston.Jones@ncleg.gov>, "Jasmine.Miller@ncleg.gov" <Jasmine.Miller@ncleg.gov>, "Johnna.Smith@ncleg.gov" <Johnna.Smith@ncleg.gov>, "Justin.Lucas@ncleg.gov" <Justin.Lucas@ncleg.gov>, "Karleigh.Ndiaye@ncleg.gov" <Karleigh.Ndiaye@ncleg.gov>, "Lana Witt (Rep. Mike Schietzelt)" <Lana.Witt@ncleg.gov>, "Lezonia.Jones@ncleg.gov" <Lezonia.Jones@ncleg.gov>, "Mason.Powell@ncleg.gov" <Mason.Powell@ncleg.gov>, "Megan.Kluttz@ncleg.gov" <Megan.Kluttz@ncleg.gov>, "Rachel.Ager@ncleg.gov" <Rachel.Ager@ncleg.gov>, "Sean.Harrington@ncleg.gov" <Sean.Harrington@ncleg.gov>, "Susanh.Burleson@ncleg.gov" <Susanh.Burleson@ncleg.gov>, "Tammy.Ross@ncleg.gov" <Tammy.Ross@ncleg.gov>, "Allen.Chesser@ncleg.gov" <Allen.Chesser@ncleg.gov>, "Allison.Dahle@ncleg.gov" <Allison.Dahle@ncleg.gov>, "Amber.Baker@ncleg.gov" <Amber.Baker@ncleg.gov>, "Amos.Quick@ncleg.gov" <Amos.Quick@ncleg.gov>, "Ben.Moss@ncleg.gov" <Ben.Moss@ncleg.gov>, "Brenden.Jones@ncleg.gov" <Brenden.Jones@ncleg.gov>, "Brian.Echevarria@ncleg.gov" <Brian.Echevarria@ncleg.gov>, "Carla.Cunningham@ncleg.gov" <Carla.Cunningham@ncleg.gov>, "Eric.Ager@ncleg.gov" <Eric.Ager@ncleg.gov>, "Grant.Campbell@ncleg.gov" <Grant.Campbell@ncleg.gov>, "Harry.Warren@ncleg.gov" <Harry.Warren@ncleg.gov>, "Jake.Johnson@ncleg.gov" <Jake.Johnson@ncleg.gov>, "Jeffrey.McNeely@ncleg.gov" <Jeffrey.McNeely@ncleg.gov>, "John.Blust@ncleg.gov" <John.Blust@ncleg.gov>, "Maria.Cervania@ncleg.gov" <Maria.Cervania@ncleg.gov>, "Rep. Mike Schietzelt" <Mike.Schietzelt@ncleg.gov>, "Shelly.Willingham@ncleg.gov" <Shelly.Willingham@ncleg.gov>, "Stephen.Ross@ncleg.gov" <Stephen.Ross@ncleg.gov>, "Timothy.Reeder@ncleg.gov" <Timothy.Reeder@ncleg.gov>, "Zack.Hawkins@ncleg.gov" <Zack.Hawkins@ncleg.gov>

Dear Joe and members of the House Oversight Committee,

I am following up on the email I sent Thursday, July 17, as I have not received any response regarding applicable laws that authorize clerks to issue dispositive orders—particularly in the North Carolina Court of Appeals—refuse to disclose judicial names on such orders, or impose unauthorized filing fees.

Please be advised that I will no longer engage in telephone communications regarding this matter unless scheduled and recorded, due to the lack of good faith and transparency during our previous call. All future communications should be in writing. I am particularly concerned that Mr. Wes Jones—the attorney representing the oversight body—acknowledged it is "well known among attorneys" that clerks issue dispositive appellate orders, including dismissals. That acknowledgment, coupled with the Committee's inaction, raises serious constitutional concerns.

As an act of good faith, I am providing each member of the oversight committee—particularly Representative Blust and Representative Schietzelt, both licensed attorneys—the opportunity to clarify their position. Silence in this context will be treated as conscious omission and potential ratification of constitutional violations.

Absent a written citation to legal authority justifying the nondisclosure of judicial identities in dispositive orders and unauthorized fees, I will proceed with submitting this correspondence and supporting evidence to the United States District Court in my ongoing civil rights action under 42 U.S.C. § 1983. I also reserve the right to name additional parties in that litigation.

I understand that the State of North Carolina cannot be named as a defendant under § 1983 due to sovereign immunity, and that legislators enjoy absolute immunity only for monetary damages stemming from legislative acts. However, I am seeking declaratory or injunctive relief and accountability for non-legislative conduct, which is not shielded by absolute immunity.

Legislators take an oath to uphold both state and federal constitutions. If members of this oversight committee are actively obstructing the disclosure of judicial fraud or are complicit in unconstitutional practices for political or institutional purposes, they may be operating beyond the scope of protected legislative activity and acting under color of law. Continued inaction will be cited in the record as evidence of deliberate indifference by state legislative officials to systemic constitutional violations occurring within the North Carolina judiciary.

Additionally, I have conducted an extensive review of the North Carolina Court of Appeals' practices. Contrary to Mr. Soar's assertion of a longstanding policy since July 2022, I found that in 2023 alone, approximately 7% of dispositive orders in public civil appellate cases did identify judicial panel members. I also located at least one such order in 2024. Notably, prior to the last election, most orders stated, "By order of the Court," whereas coinciding with the Griffith and Riggs dispute, the language changed to "By order of the Court sitting as a three-judge panel." If such orders were in fact issued by clerks, then the use of judicial language is not merely civil misconduct—it constitutes a misrepresentation of judicial authority, which may rise to the level of criminal fraud.

Further, more than 50% of civil appellate dismissals in 2023 and 2024 involved pro se litigants. Based on this trend, 2025 appears to be following suit. I plan to contact each affected pro se litigant—approximately 30 cases thus far—to inform them of their potential civil rights claims within the applicable statutory limitations. I understand the boundary

between legal advice and legal information and will act accordingly.  **EXHIBIT 2**

I have organized all of this research—including a spreadsheet of case data and examples—into a public folder available here.

This, along with documentation of unauthorized fee practices, will be shared with members of the media, the public, and legal reform advocates. I will continue to raise awareness of this issue. Suppressing or disliking my efforts only motivates me further.

It sets a dangerous precedent when legislators manipulate the judiciary to serve political or institutional interests. This not only undermines the foundational principles of democracy but also erodes public trust and leaves future generations to deal with the consequences. I would hope a reminder is unnecessary, but history compels us to remember: North Carolina once sanctioned the forced sterilization of over 7,400 citizens based on radical ideology and pseudoscience—including girls as young as 12.

While the state later offered financial compensation, no amount—certainly not $20,000—can restore the fundamental right to bear children. Let us learn from these past injustices, not repeat them under a different guise.

Thank you,

**Charity Mainville**

---

**Joe Coletti (Gov Ops Staff - House Majority)** <Joe.Coletti@ncleg.gov>                Thu, Jul 31, 2025 at 10:36 AM
To: Charity Mainville <camainville@gmail.com>
Cc: "Rep. Jake H. Johnson" <Jake.Johnson@ncleg.gov>, "Rep. Brenden Jones" <Brenden.Jones@ncleg.gov>, "Rep. Harry Warren" <Harry.Warren@ncleg.gov>, "Rep. Eric Ager" <Eric.Ager@ncleg.gov>, "Rep. Dean Arp" <Dean.Arp@ncleg.gov>, "Rep. Amber Baker" <Amber.Baker@ncleg.gov>, "Rep. John Blust" <John.Blust@ncleg.gov>, "Rep. Grant Campbell" <Grant.Campbell@ncleg.gov>, "Rep. Maria Cervania" <Maria.Cervania@ncleg.gov>, "Rep. Allen Chesser" <Allen.Chesser@ncleg.gov>, "Rep. Carla Cunningham" <Carla.Cunningham@ncleg.gov>, "Rep. Allison A. Dahle" <Allison.Dahle@ncleg.gov>, "Rep. Brian Echevarria" <Brian.Echevarria@ncleg.gov>, "Rep. Zack Hawkins" <Zack.Hawkins@ncleg.gov>, "Rep. Ben Moss" <Ben.Moss@ncleg.gov>, "Rep. Jeffrey C. McNeely" <Jeffrey.McNeely@ncleg.gov>, "Rep. Amos Quick" <Amos.Quick@ncleg.gov>, "Rep. Timothy Reeder, MD" <Timothy.Reeder@ncleg.gov>, "Rep. Stephen Ross" <Stephen.Ross@ncleg.gov>, "Rep. Mike Schietzelt" <Mike.Schietzelt@ncleg.gov>, "Rep. Shelly Willingham" <Shelly.Willingham@ncleg.gov>, "Wes Jones (Gov Ops Staff - House Majority)" <Wes.Jones@ncleg.gov>

Ms. Mainville,

Thank you for reaching out to the General Assembly, and for your patience as we read through policies, statutes, and the constitution and raised your concerns with appellate lawyers, judges, and court staff.

You gave us three questions:

 1. Where is the authority for courts to keep three-judge panels anonymous?
 2. Are courts charging inappropriate fees?
 3. Does the Clerk of Court make judicial determinations?

As you know, decisions made in the past can remain until somebody asks questions again. The questions you raised hit upon some of these practices in the courts. In short:

 1. The Court seems to have discretion on releasing names of judges on three-judge panels. It began to release the names of panels on petitions in 2022. In a future rulemaking session, the courts may reconsider the release of judges' names in other cases.

7

## EXHIBIT 2

2. Your question about fees raised a few issues. "There is no fee for filing a motion in a cause." A filing for a case still in trial court does not fit this definition. I expect the courts will try to address this confusing corner of procedural rules at their next opportunity.
3. We misspoke on the authority of the Clerk of Court. He is only permitted to sign documents or orders as directed by a three-judge panel.
4. Finally, the Court of Appeals makes rules with approval of the North Carolina Supreme Court as outlined in the state constitution and general statute.

## Additional details and background

### The Court has discretion to release names of judges on panels

In 2022, the COA began posting, after 90 days, the names of the three judges who decide a petition. This marked a change from long-standing practice. In making the change, the chief judge stated, "Since its founding, the Court has not disclosed the judges who rule on the hundreds of petitions the Court receives each year." Because it was a well-established practice, there had never been a written rule or statute on this topic. The same practice has been true for motions. You can see the names of judges on your petitions that are more than 90 days old here.

When we raised this question with court staff, they recognized the potential for confusion.

### Fees apply if a case is still before a District Court

The records you shared with us include nine fees of $10 each for motions you filed.

Appendix F of the North Carolina Rules of Appellate Procedure contemplates a $10 docketing fee for petitions and states that "there is no fee for filing a motion in a cause." That last phrase, "in a cause," is the operative language here. According to COA staff, motions filed at the COA when a party does not have a case pending at the Court have not historically been considered to be filed "in a cause."

The policy to assess a $10 fee for each filing at this stage of a case dates back nearly fifty years. Now that it has been brought to their attention, the COA may reconsider this policy, in consultation with the North Carolina Supreme Court.

The $364 you mentioned for sanctions are addressed the North Carolina Rules of Appellate Procedure under Rule 25 on "Penalties for Failure to Comply with Rules" and Rule 34 on "Frivolous Appeals; Sanctions".

### The Clerk of Court acts solely as directed by the Court

The Clerk of Court has no delegated or discretionary authority to make determinations on any matter. A three-judge panel directs all rulings on motions and petitions.

The General Assembly created the COA in 1967 with G.S. § 7A-16. That same statute dictates that the COA shall sit in panels of three judges or *en banc* with all appellate judges. As you noted, the law is emphatic about the importance of a full three-judge panel when not sitting *en banc*: "Three judges shall constitute a quorum for the transaction of the business of the court when sitting in panels of three judges".

Thus, it takes three judges to make any determination and each document you received affirms it was the decision of a three-judge panel even though the only signature is that of the Clerk of Court, signing on their behalf.

### The NC Supreme Court approves Court of Appeals rules

Article IV, section 13(2) of the North Carolina Constitution and General Statute § 7A-33 charge the NC Supreme Court with the constitutional authority and the statutory duty to adopt rules of procedure for the administration of justice in the appellate courts. The NC

8

# EXHIBIT 2

Supreme Court allows the NC Court of Appeals (COA) to adopt its own rules under the umbrella of the Supreme Court's supervisory power in G.S. § 7A-16.

I hope this response is helpful.

Best regards,

**Joe Coletti** House Majority Oversight Staff Director

(919) 831-4261 | **Joe.Coletti@ncleg.gov** | @joecoletti

Charity Mainville                                    <camainville@gmail.com>
To: "Joe Coletti (Gov Ops Staff - House Majority)" <Joe.Coletti@ncleg.gov>
Cc: "Rep. Jake H. Johnson" <Jake.Johnson@ncleg.gov>, "Rep. Brenden Jones" <Brenden.Jones@ncleg.gov>, "Rep. Harry Warren" <Harry.Warren@ncleg.gov>, "Rep. Eric Ager" <Eric.Ager@ncleg.gov>, "Rep. Dean Arp" <Dean.Arp@ncleg.gov>, "Rep. Amber Baker" <Amber.Baker@ncleg.gov>, "Rep. John Blust" <John.Blust@ncleg.gov>, "Rep. Grant Campbell" <Grant.Campbell@ncleg.gov>, "Rep. Maria Cervania" <Maria.Cervania@ncleg.gov>, "Rep. Allen Chesser" <Allen.Chesser@ncleg.gov>, "Rep. Carla Cunningham" <Carla.Cunningham@ncleg.gov>, "Rep. Allison A. Dahle" <Allison.Dahle@ncleg.gov>, "Rep. Brian Echevarria" <Brian.Echevarria@ncleg.gov>, "Rep. Zack Hawkins" <Zack.Hawkins@ncleg.gov>, "Rep. Ben Moss" <Ben.Moss@ncleg.gov>, "Rep. Jeffrey C. McNeely" <Jeffrey.McNeely@ncleg.gov>, "Rep. Amos Quick" <Amos.Quick@ncleg.gov>, "Rep. Timothy Reeder, MD" <Timothy.Reeder@ncleg.gov>, "Rep. Stephen Ross" <Stephen.Ross@ncleg.gov>, "Rep. Mike Schietzelt" <Mike.Schietzelt@ncleg.gov>, "Rep. Shelly Willingham" <Shelly.Willingham@ncleg.gov>, "Wes Jones (Gov Ops Staff - House Majority)" <Wes.Jones@ncleg.gov>

Dear Joe,

Thank you for your diplomatic response. However, you did not answer my questions. I did not ask for your interpretation of authority—I asked for the legal authority. The only valid authority in this matter is codified law. If the courts are violating law, the Oversight Committee has a duty to investigate.

Are you speaking on behalf of the Committee, or in your own individual capacity? If the Committee stands behind this response, the level of institutional incompetence is deeply concerning. I provided the statutes, constitutional provisions, and documented evidence. Your summary ignores that entirely.

**1. Judicial Name Withholding**
Your response implies that compliance with the Constitution and Public Records Law is discretionary. That is false. I submitted motions from 2023 and 2024 listing judicial names. The practice has not been uniform, and denying access violates both state and federal law.

**2. Fees**
You claim "in a cause" is the operative phrase. It is not. The operative authority is: "Fees and costs are provided by order of the Supreme Court and **apply to proceedings in either appellate court.**"

Moreover, I demonstrated inconsistent enforcement, and as soon as I challenged the fee, no further charges were imposed. That's not a legal framework—that's arbitrary administration. And if "policy" bars name disclosure regardless of trial status, the same logic must preclude charging fees based on that status. You can't invoke "district court" as a shield only when convenient.

**3. Clerk Authority**
You now say the clerk cannot act independently. Yet when I challenged this initially, your staff attorney claimed the opposite—that "all attorneys know this is allowed." Are you now stating that your staff attorney was wrong in his legal interpretation? Will you certify that under oath?

**4. Law Making**
Yes, I am well aware of how laws are made. Are you?

**Sanctions**
As for the $364 charge, sanctions were denied—confirming this fee was unauthorized. I am demanding an immediate refund. If this legislature condones theft from constituents, let the record reflect that.

**Final Request**

**EXHIBIT 2**

Let's not continue this back and forth. I am requesting a direct vote from each member of the Oversight Committee. I want each member to go on the record:

*Do you acknowledge your constitutional and statutory duty to investigate credible allegations of judicial misconduct—specifically the imposition of unlawful fees, impersonation of judicial authority by the Clerk of Court, and the concealment of judicial identities in violation of public records law and the state constitution? Yes or No.*

Please have each of the following members respond individually below:

Rep Johnson :
Rep Jones:
Rep Warren:
Rep Ager:
Rep Arp:
Rep Baker:
Rep Blust:
Rep Campbell:
Rep Cervania:
Rep Chesser:
Rep Cunningham:
Rep Dahle:
Rep Echevarria:
Rep Hawkins:
Rep McNeely:
Rep Moss:
Rep Quick:
Rep Reeder:
Rep Ross:
Rep Schietzelt:
Rep Willingham:

This is your moment to show whether you serve the Constitution or protect misconduct. I will make the results public.

Sincerely,

**Charity Mainville**

---

**Charity Mainville** <camainville@gmail.com>                           Fri, Aug 1, 2025 at 10:48 AM
To: "Joe Coletti (Gov Ops Staff - House Majority)" <Joe.Coletti@ncleg.gov>
Cc: "Rep. Jake H. Johnson" <Jake.Johnson@ncleg.gov>, "Rep. Brenden Jones" <Brenden.Jones@ncleg.gov>, "Rep. Harry Warren" <Harry.Warren@ncleg.gov>, "Rep. Eric Ager" <Eric.Ager@ncleg.gov>, "Rep. Dean Arp" <Dean.Arp@ncleg.gov>, "Rep. Amber Baker" <Amber.Baker@ncleg.gov>, "Rep. John Blust" <John.Blust@ncleg.gov>, "Rep. Grant Campbell" <Grant.Campbell@ncleg.gov>, "Rep. Maria Cervania" <Maria.Cervania@ncleg.gov>, "Rep. Allen Chesser" <Allen.Chesser@ncleg.gov>, "Rep. Carla Cunningham" <Carla.Cunningham@ncleg.gov>, "Rep. Allison A. Dahle" <Allison.Dahle@ncleg.gov>, "Rep. Brian Echevarria" <Brian.Echevarria@ncleg.gov>, "Rep. Zack Hawkins" <Zack.Hawkins@ncleg.gov>, "Rep. Ben Moss" <Ben.Moss@ncleg.gov>, "Rep. Jeffrey C. McNeely" <Jeffrey.McNeely@ncleg.gov>, "Rep. Amos Quick" <Amos.Quick@ncleg.gov>, "Rep. Timothy Reeder, MD" <Timothy.Reeder@ncleg.gov>, "Rep. Stephen Ross" <Stephen.Ross@ncleg.gov>, "Rep. Mike Schietzelt" <Mike.Schietzelt@ncleg.gov>, "Rep. Shelly Willingham" <Shelly.Willingham@ncleg.gov>, "Wes Jones (Gov Ops Staff - House Majority)" <Wes.Jones@ncleg.gov>

Dear Joe,

I want to acknowledge that I overlooked a key portion of your email yesterday and I'm sorry for that. You stated:

*"The NC Supreme Court approves Court of Appeals rules. Article IV, section 13(2) of the North Carolina Constitution and General Statute § 7A-33 charge the NC Supreme Court with the constitutional authority and the statutory duty to adopt rules of procedure for the administration of justice in the appellate courts. The NC Supreme Court allows the NC Court of Appeals (COA) to adopt its own rules under the umbrella of the Supreme Court's supervisory power in G.S. § 7A-16."*

This raises a serious concern. Your statement implies one of two things:  **EXHIBIT 2**

1. That the Supreme Court is aware of and condones the misconduct occurring at the Court of Appeals—including judicial anonymity, unauthorized fees, and improper clerk actions—which would suggest systemic collusion; or
2. That the Supreme Court has failed in its constitutional duty to supervise and adopt enforceable rules, thereby allowing misconduct to go unchecked.

As you surely know, internal policies are not enforceable rules. **Under N.C. Const. art. I, § 19** and public access principles, a secret or unpublished policy cannot be treated as governing law. **N.C. App 39** requires that all adopted rules be publicly available. If the court is relying on informal or undisclosed policy to deny judge name disclosure, impose fees, or obstruct filings, such actions are ultra vires and unconstitutional.

Moreover, the North Carolina Supreme Court has no authority to override the state's Public Records Law unless expressly granted by statute or constitutional amendment. Even the Court itself affirmed in *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 478, 412 S.E.2d 7, 15 (1992):

*"Public records are the property of the people... The purpose of the Public Records Law is to guarantee that the people may obtain copies of public records and public information."*

**By your own framing, this now implicates the Supreme Court's role in permitting or ignoring constitutional violations under Article IV, § 13(2) and G.S. § 7A-33.** This likely explains why they allowed a demonstrably unethical and misleading filing in my appeal to stand without correction, and why my petition for discretionary review was denied without explanation—possibly by a clerk, not a judge. We still don't know, because their names are concealed.

Accordingly, **please add the North Carolina Supreme Court to my request for investigation.** If the judicial hierarchy shields wrongdoing rather than correcting it, then the entire structure requires review. We are far beyond internal policy issues—this is now a matter of constitutional governance and public trust.

Thank you,

**Charity Mainville**

11

**EXHIBIT 3**

**Charity Mainville** <camainville@gmail.com>
To: AdminOversight@ao.uscourts.gov

Fri, Jul 18, 2025 at 2:15 PM

Dear Administrative Office,

Attached is my formal request for administrative oversight under the Guide to Judiciary Policy, Vol. 2, Ch. 4, §§ 410.30(b), 420.10, and 420.50. This matter involves systemic administrative abuse in the Middle District of North Carolina.

I previously submitted a similar complaint to Chief Judge Catherine Eagles, which was dismissed without substantive review. I now respectfully request that this matter be reviewed by the by an Administrative Office Investigator, as outlined in the applicable policy.

Please confirm receipt and ensure this is not redirected to the Chief Judge of the Middle District.

Thank you,

## Charity Mainville

📄 **Administrative-Oversight-Complaint-Attachments_Opt.pdf**
8128K

---

**Charity Mainville** <camainville@gmail.com>
To: AdminOversight@ao.uscourts.gov

Mon, Jul 21, 2025 at 11:01 AM

Hello,

I am following up on this. Can you please confirm this has been received?

Thank you,

## Charity Mainville

---

**Admin Oversight** <AdminOversight@ao.uscourts.gov>
To: Charity Mainville <camainville@gmail.com>

Tue, Jul 22, 2025 at 4:03 PM

Ms. Mainville,

We have received your complaint.

---

**From:** Charity Mainville <camainville@gmail.com>
**Sent:** Monday, July 21, 2025 3:01 PM
**To:** Admin Oversight <AdminOversight@ao.uscourts.gov>
**Subject:** Re: Escalated Administrative Oversight Complaint – Middle District of North Carolina

**CAUTION - EXTERNAL:**

[Quoted text hidden]

**CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.**

---

**Charity Mainville** <camainville@gmail.com>
To: Admin Oversight <AdminOversight@ao.uscourts.gov>

Tue, Jul 22, 2025 at 5:45 PM

Dear Clerk,

I am submitting a Writ of Mandamus for filing forma pauperis and expediated ruling pro se. I believe all items and requirements are included but please let me know if you need anything else.

Thank you,

Charity Manville
Camanville@gmail.com

Thank you!

--

## Charity Mainville

[Quoted text hidden]

---

**Charity Mainville** <camainville@gmail.com>
To: Admin Oversight <AdminOversight@ao.uscourts.gov>

**EXHIBIT 3**

Wed, Aug 6, 2025 at 12:13 PM

Hello,

I am following up on my complaint. I haven't heard anything and I'm experiencing more delays including the fact my Renewed Emergency TRO and supplemental motion hasn't even been submitted to the judge yet and it's been a week.

I would appreciate reassurance that this is being looked into.

Thank you,

--

## Charity Mainville